ISAAC S. JENNINGS, PLAINTIFF IN ERROR, v. WILLIAM
BURNHAM, DEFENDANT IN ERROR.

1. The customary practice of setting apart proprietary lands for the several owners who held the same in common, was a mere mode of partition, and cannot be used for the purpose of passing title.
2. The proprietors cannot transfer title to their lands to a stranger by the use of a warrant and survey.
3. After a survey has stood upon the records of the proprietors, without question, for a great lapse of time—in the present case for nearly two hundred years—it will be conclusively presumed that it had been inspected and approved of by the proprietors.
4. So, under such circumstances, the admission to the record of such a survey made in favor of a person described therein as the owner of two proprieties, will estop the proprietors from denying the fact that such person was such owner.
5. In ejectment it is not necessary that the defendant should prove title in himself; he will defeat the action by proving that it is out of the plaintiff.

On error to the Supreme Court.

Ejectment for lands in the county of Ocean.    Both litigants claim under the proprietors.

For the plaintiff in error, *Isaac W. Carmichael* and *Barker Gummere.*

For the defendant in error, *Thomas E. French.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    At the trial of this case the jury was instructed to find for the defendant.    That result appears to us to be right on either of two grounds, viz., *first,* that the plaintiff failed to prove title in himself, and *second,* the defendant's proofs showed title out of the plaintiff.

First with regard to the plaintiff's title.    This is exhibited as follows :

On May 20th, 1884, as appears by the book of records of the proprietors, a warrant and memorandum were entered therein in these words, viz. : " To Charles E. Noble, trustee of the Board of East New Jersey, (10,000) ten thousand acres of rights of location are hereby ordered by the council to you, as trustee of the Board, and for the use of the same until otherwise ordered. Memorandum—That the Board of Inspectors of the Eastern Division of New Jersey, at a meeting held at the office of the Surveyor General, at Perth Amboy, on the 20th day of May, 1884, resolved by unanimous vote that 10,000 acres of rights of location be set off and issued to Charles E. Noble, Trustee, to be located and retained for the use of the Board." This memorandum and warrant are certified by the register to be a " true copy " of a warrant ordered by the proprietors of East New Jersey, as appears in the book of records.

The record further shows a survey made and recorded by the authority thus stated.

In addition to the foregoing muniment of title the plaintiff put in evidence a deed from Charles E. Noble to himself, for the premises described and embraced in the survey.

It thus appears that the board of inspectors of the eastern division of New Jersey has attempted to convey to a stranger a portion of the land which was supposed at the time to be owned by it. Noble was not a tenant in common with the proprietors represented, it may be, by the board, but was a stranger to them so far as their lands were concerned.

The inquiry, therefore, supervenes whence this power in the proprietors to convey the title to these premises in the mode thus set forth. As a mode of partition of these lands when held in common by the proprietors or with their grantees, the course of law by warrant and survey has been well known for many ages and has always been recognized by the courts as a part of the local common law of this state. But this device had no effect upon the title. Its office was purely partitive—it distributed to each owner his quota of the land. It had the operation, and nothing but the opera-

tion, of a quit-claim deed, made use of for the purposes of partition. This is the doctrine very distinctly stated by Chief Justice Kirkpatrick, in *Arnold* v. *Munday*, 1 *Halst.* 1. And it is historically certain that it was by warrant and survey alone that in the western division of the province, from the beginning, these proprietary lands were allotted to each proprietor and each of his alienees holding as tenants in common, while in the eastern division, before the surrender in 1702, it was the practice additionally to issue patents or grants under the seal of the province. After the surrender in both the eastern and western divisions, partitions of these lands were effected by means of warrants and surveys without more. This peculiar procedure is set out at large and with much clearness in the historical document so widely known as the "Elizabethtown Bill in Chancery," which was filed in the year 1745.

This is the view taken of the process in question in the case of *Estell* v. *The Bridesburg Land and Improvement Co.,* reported in 6 *Vroom* 235. "A survey," it is there said, " under a proprietary title is not a conveyance. It is an instrument *sui generis*, in the nature of a partition ; a customary mode in which a proprietor has set off to himself, in severalty, a part of the common estate. The methods of proceeding, with respect to these lands, have long been a part of the common law of the state, and have been, *ex officio*, taken notice of by the courts. They can be traced through the reported decisions, which clearly define their legal effect. Chief Justice Kirkpatrick, whose learning on the subject of land titles appears to have been very complete, in *Arnold* v. *Munday*, 1 *Halst.* 11, states, in perspicuous terms, the mode in which this description of property was distributed among the several owners. 'The proprietors of New Jersey,' he says, 'are tenants in common of the soil; their mode of severing this common right is by issuing warrants from time to time to the respective proprietors, according to their several and respective rights authorizing them to survey and appropriate, in sever-

alty, the quantities therein contained.    Such warrant does not convey a title to the proprietor; he had that before."

This being the use and scope of this abnormal procedure, by warrant and survey, it appears to follow in logical sequence that the plaintiff in the case before the court altogether failed to show a right to sustain his action.    His immediate grantor, Charles E. Noble, was not vested with title by virtue of the warrant and survey made under the authority of the board of proprietors, inasmuch as he was not a tenant in common with them.

The second topic for discussion relates to the title exhibited on the side of the defendant.

This contention involves, as a fundamental proposition, that one Daniel Cox was, at one time, the owner of the premises in dispute.

In order to evince this essential fact, a survey, certified as copied from the proprietary records, was produced.    It is in the common form required by the surveyor of the proprietors. It begins by describing its own nature in these terms, viz.: "By warrant from the Proprietors of East New Jersey, dated May 20, 1690.    Surveyed and laid out for Doctor Daniel Cox (in right of two Proprieties) two thousand four hundred acres of meadow and upland at Barnegat, in two tracts."    Then follows a description of the tracts surveyed, and included among them are the lands now in litigation.

It is deemed of vital importance to settle with accuracy the legality and force of this alleged muniment of title, for the entire defence rests upon that inquiry.

The objections to this part of the proof of the defendant's title were two in number.    The first was that, in those early times to which this transaction relates, in order to validate a survey of this character, it should have been inspected and approved of by the board of proprietors, and it is insisted that there is no evidence in this case that this entry was thus sanctioned.

We think the conclusive answer to this contention is that, after the lapse of over two hundred years, it is a plain legal

presumption that every act and formality that were necessary to validate entries of this character, were, in point of fact, performed.   Bearing in mind that these surveys could not be made except by the order of the proprietors, that they were made exclusively by their own officer, and that they were entered on their own records by their own register, it is manifest the existence of such entry would *per se* and at once give rise to the inference, running close to demonstration, that it had the approval of those whose officers had made it and entered it, and whose records contained it.   In point of substance the record in question was made by the proprietors themselves, and if it had been made so late even as yesterday, the reasonable and, indeed, the legal conclusion would have been that the proprietors were privy to it, and that it had been sanctioned by them.   And if such an inference from so recent an act were disputable, most assuredly no jurist can doubt that, after such an entry has remained upon such a record, without challenge from any source whatever, for over two centuries, the legal presumption in favor of its authenticity is conclusive and absolute.   In regard to ancient transactions, the well-known legal principle is that they are presumed to have been regularly performed if the contrary be not shown.   This doctrine, in a concrete form, is exemplified in the case of *Hoboken Land and Improvement Co.* v. *Kerrigan,* reported in 2 *Vroom* 1.   There the inquiry was with respect to the legal sufficiency of the certificate of the acknowledgment of a deed which had been made and recorded before 1799.   The act then in force prescribed that deeds might be recorded which had been acknowledged before certain officers, and the official certificate in that instance was that the grantor " had signed, sealed and delivered the within deed in the presence of me, P. H., one of the judges of the Court of Common Pleas, have perused the same, find no erasures or interlineations, and allow the same to be recorded." The court held that the certificate should be deemed sufficient, and that if a verbal acknowledgment under the statute were necessary " it ought now to be presumed to have been made."

In *Jackson* v. *Gilchrist*, 15 *Johns*. 89, a similar result was reached, the certificate in that instance setting forth that the grantor appeared before the judge "to acknowledge the deed," and that "it ought to be presumed that he did acknowledge it." *Hunt* v. *Johnson*, 19 *N. Y.* 279, is an authority to the same effect. Numerous illustrations of the rule will be found in the notes in *Whart. Ev.*, § 1318.

By virtue of this doctrine, so useful that it is one of the necessary outgrowths of experience and common sense, it must be conclusively presumed that, with respect to the survey in hand, *omnia esse rite acta;* in other words, it is to be treated as a record entry duly inspected, made and approved of by the board of proprietors.

With respect to the second contention, that at the time that this survey was made and previous to the surrender of the proprietary government to Queen Anne, it was customary, in making partitions of this property, held in common by the twenty-four proprietors, or their grantees, to supplement a warrant and survey with a formal patent or grant, it seems to the court sufficient to say that the history of this species of titles shows, in the most conclusive manner, that such patents were not deemed essentials of the Partitive act. From the first settlement of the western division of the state, the shares of the common property were allotted by the use of the warrant and survey alone, and since that event such has been the practice in the eastern division as well as in the western. It is obvious that if a patent was an indispensable part of the partition of these lands before the surrender, similarly, afterwards the property could not have been separated without its co-operation. Since the year 1703 the complete efficaciousness of warrants and surveys duly recorded as a mode of partition, in this class of cases, has been established by uniform practice, and has on many occasions received judicial recognition. If the doctrine required corroboration, such force has been imparted to it by the weighty sanction of Mr. Justice Bradley, sitting in the Circuit Court of the United States, in the case of *Baeder* v. *Jennings*, 40 *Fed. Rep.* 199.

The conclusion of the court is that the survey before us effected the partition in question unless it was deprived of its force by circumstances existing at the time, as is alleged, and to which it is for a moment necessary to advert.

We have seen that these proprietary lands were divisible among the several tenants in common by means of these warrants and surveys; that the entire effect of such a process was to allot the land in severalty to the various owners, and that the title could not be transferred by its use. On the assumption of the correctness of this theory, the counsel of the plaintiff insisted that the survey before us was inoperative and void, on the ground that Daniel Cox, in whose favor the above-mentioned survey was made, was not a co-owner of these proprietary lands, and consequently this method of proceeding in question was inapplicable and inefficacious. In laboring this point, counsel, at great length, criticised the various conveyances which went to make up the title to Mr. Cox, and, as a result, contended that it was not sufficiently shown that he was a tenant in common with the other proprietors, the corollary being that the attempted partition had nothing to operate upon.

But I have not found it necessary to enter upon the discussion alluded to, as it seems to me obvious that it is entirely irrelevant to this case in its present attitude, upon this record. This conclusion has its basis in the fact that the plaintiff, as the grantee of the board of proprietors, does not occupy a position which gives him a right to challenge the title in question. He is estopped from raising up such a contention because the board of proprietors are so estopped. It will be remembered that the survey above expounded is prefaced with a declaration in these words, viz.: "By warrant from the Proprietors of East New Jersey, dated May 20, 1690: Surveyed and laid out for Doctor Daniel Cox (in right to two Proprieties) two thousand four hundred acres," &c. A propriety was the one twenty-fourth part of all the undivided proprietary lands in the eastern division, so that the proprietors, by a formal entry on their own records, admit that Mr.

Cox, at the time in question, was the owner of the one forty-eighth part of such lands, and, acting on this admission, they set off to him a part of his share in severalty. After such an admission and such action, and especially after the lapse of nearly two centuries, it is deemed indisputably clear that this plaintiff is precluded from denying the legal existence of the title so conceded. It will be observed the posture of affairs is this: In 1703 these grantors of the plaintiff admitted on their records that Mr. Cox owned two proprieties, and, on that admitted state of facts, they set off to him, among other tracts, the premises in question; and now, after the passage of over a hundred and ninety years, it is sought to be shown that the admission in question was a mistake and that the act of partition founded on it was likewise a mistake. Such a position is conspicuously futile on two grounds—it is founded on the erroneous assumption that a mistake of the kind alleged can be corrected after such a great lapse of time, and that it can be corrected in a court of law in an action of ejectment.

This branch of the defence must be rejected on the ground just stated.

So it is deemed it is equally unavailing by force of the statute of this state enacted June 5th, 1787. The third section of this law enacts "that any survey made of any lands within either the eastern or western division of the proprietors of the State of New Jersey, and inspected and approved of by the general proprietors, or council of proprietors of such division, and by their order or direction entered upon record in the secretary's office of this state or in the surveyor general's office in such division, shall, from and after such record is made, preclude and forever bar such proprietors and their successors from any demand thereon, any plea of deficiency of right or otherwise notwithstanding."

In the case already referred to, of Baeder *v.* Jennings, Mr. Justice Bradley expresses the opinion that this act is retrospective in its operation, a view that is considerably fortified by the fact that the statutory preamble declares that one of

the legislative purposes is to quiet claims and secure titles. Although the statutory language is somewhat ambiguous on the subject, I incline to concur in the construction thus ex-, pressed, being influenced in considerable degree by the consideration that the section just recited is, in reality, an affirmation of the common law, for these surveys, as we have seen, are validated and made conclusive by the principles of that system.

Another subject that was elaborately discussed in the briefs of the counsel of the plaintiff will be disposed of at a word, as it also is deemed irrelevant to the inquiry before the court. The theme alluded to was a consideration and criticism of the various links of the defendant's title between the above-named Daniel Cox and himself. It is undeniable that if the defendant proves a title out of the plaintiff, he succeeds in defeating this action, and consequently, when he exhibited a title in Daniel Cox to these premises, in severalty, by force of the survey above discussed, it became of no importance whether that title was devolved according to law upon him or not.

Let the judgment be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, ABBETT, DEPUE, DIXON, GARRISON, LIPPINCOTT, REED, BOGERT, SMITH.   10.

*For reversal*—None.